IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| GAIL COLE | : | |
| | : | |
| v. | : | Civil No. CCB-05-1579 |
| | : | |
| ANNE ARUNDEL COUNTY | : | |
| BOARD OF EDUCATION, et al. | : | |

**MEMORANDUM**

Now pending before the court is a joint motion for summary judgment filed by defendants Anne Arundel County Board of Education, Sharon Stratton, Wanda McIntire, Winship Wheatley, and Richard Berzinski.  The plaintiff, Gail Cole, has sued the defendants for alleged violations of federal and state law arising out of her employment as a bus driver and her transfer away from a route serving the Arundel High School.  The issues in this case have been fully briefed and no hearing is necessary.  *See* Local Rule 105.6.  For the reasons stated below, the defendants' motion will be granted.

**BACKGROUND**

Plaintiff Gail Cole ("Cole"), an African-American woman, worked as a bus driver with Smith Bus Service from 1991-2004.  Her performance evaluations for most of that time appear to be quite good, and in her last performance rating, she was given high marks.  (Def.'s Mem. at. Ex. E, Winship Dep. at 38-39.)  In 2004, Cole was employed by Crofton Charters to drive Bus

217, which served several schools in the Anne Arundel County Public School System. Cole testified that the reason she accepted employment with Crofton Charters was to serve this particular route, which provided Cole the opportunity to work more hours than previous routes. (Pl.'s Opp. Mem. at Ex. 3, Cole Dep. at 17-20.) Cole had a bus attendant (Karen Maier) who traveled with Cole on her bus routes.

In spring 2004, Cole reports that she began having some disciplinary problems with the students who rode on her route. In one incident, a student threw a battery from the bus, which struck a moving car. (*Id*. at 34.) As part of her job duties, Cole filled out a School Bus Behavior Report and reported the student and incident to Mr. Stuart Berlin, an assistant principal who acted as a liaison between the Arundel High School and Board of Education. (*Id.* at Ex. 7, Berlin Dep. at 13.) After an investigation, the offender confessed and was disciplined. (*Id.* at 20-21.)

The disciplinary problems continued. From April 29, 2004 to May 5, 2004, Cole and Maier wrote four behavior referrals for a student, whose initials are M.K.; the student refused to take his assigned seat on the bus (M.K. was not the student who earlier threw the battery). (*Id.* at Ex. 3, Cole Dep. at 35.) On May 5, because none of the four referrals had been processed, Cole went to the school office to inquire about the handling of M.K.'s discipline. Mrs. Schade, an Assistant Principal for the school, said that she had not yet gotten to M.K.'s files because of other serious disciplinary problems in the school and indicated that she would treat the referrals as a single incident instead of four separate incidents. (*Id.* at 37-39.) Cole did not like Schade's answers and wanted to speak to Ms. Sharon Stratton, Principal of Arundel High School, about the issue. (*Id.* at 39-40.)

As Cole and Maier waited to speak to Stratton, they saw Schade stop Stratton and speak

2

to her. (*Id.* at 42.) According to Cole, Stratton then approached Cole in a condescending manner, raised her voice, pointed her two-way radio in Cole's face, and told Cole that she needed to understand the magnitude of her problems with the school. (*Id.* at 42-43.) Cole responded by saying that Stratton did not need to talk down to Cole and that Stratton knew nothing about Cole. (*Id.* at 43.) Stratton then apologized to Cole, who responded by saying that she could not get any help in disciplining the students on her bus. (*Id.* at 45.) According to the defendants, Cole also said something to the effect of Stratton not "walking the talk" or that Stratton was "all talk." (*Id.* at 49-50.) At the end of the conversation, Stratton requested a meeting with Cole and Cole's supervisor, Wanda McIntire.

The following Monday, on May 10, Cole and Maier met with Stratton, McIntire, and Robert Dick, the owner of Crofton Charters. In Cole's account of the events, Stratton felt that Cole had disrespected her and that Cole needed an appointment to see her. (*Id.* at 56-57.) Defendants claim that Stratton explained why it was not possible for the school to discipline the students more quickly, but Cole did not seem satisfied with Stratton's answers. (Def.'s Mem. at Ex. B, Stratton Dep. at 72.) The meeting was not productive and, at the end of the meeting, Stratton asked McIntire to reassign Cole from Arundel High School. (*Id.* at 75.) According to Cole, Stratton told McIntire "that she hoped McIntire would do as she had agreed in a phone conversation that they had prior to the meeting." (Pl.'s Opp. Mem. at Ex. 3, Cole Dep. at 58.) McIntire then told Dick to "see what he could do" to remove Cole from serving the Arundel High School. (*Id.* at Ex. 5, McIntire Dep. at 63.)

A day or two after the meeting, Dick removed Cole from the Arundel bus route and reassigned her to a different route. (Def.'s Mem. at Ex. G, Dick Aff. at ¶ 10.) Cole's salary was

3

not docked, and her pay rate remained the same. (*Id.* at ¶ 13.)  Dick has reported that he makes the decisions about bus assignments, has the ability to reassign drivers to different routes, and was not threatened or intimidated by anyone from the Arundel High School. (*Id.* at ¶ ¶ 4, 9.)  Cole's new route offered four fewer hours per day of driving, though Mr. Dick reports that the transfer was intended to be temporary, as the school year was only weeks from completion. (*Id.* at ¶ 10.)  Two days after the transfer, Cole quit, and Dick reports that because she quit so quickly, he did not have an opportunity to train Cole on additional bus driving opportunities. (*Id.* at ¶ 11.)  While a white woman initially replaced Cole on her Arundel High School route, the next year Dick hired a black woman to drive that route. (*Id.* at ¶ 15.)  Defendants report that they did not fire Cole, and did not consider her transfer a disciplinary measure. (Def.'s Mem. at 7.)  Defendants claim that Cole was reassigned because the working relationship between the parties was not good, and hoped that the reassignment would benefit Cole because Cole felt disrespected at Anne Arundel High and felt a lack of response regarding her behavior referrals. (Def.'s Mem. at Ex. B, Stratton Dep. at 77.)  Plaintiff attributes the defendants' actions to racism and retaliation, amounting to constitutional violations.

During the summer of 2004, Cole went to an old employer, Robert Smith, asking for employment as a substitute or alternate bus driver, and in August Cole apparently was hired by Smith as a substitute bus driver. (Pl's. Opp. Mem. at Ex. 6, Smith Dep. at 67.)  Smith testified that sometime after hiring her back, Smith received a call from McIntire who told Smith to talk to Winship Wheatley, the supervisor of Transportation Services at the Arundel Board of Education, about Cole. (*Id.* at 31.)  Wheatley told Smith that Cole was not allowed to run routes that served the Arundel High School Service System; Smith did not ask Wheatley why. (*Id.* at

4

33-36.) Smith reports that Wheatley told him that Cole could work for him, but could not drive the Arundel High School route. (*Id.* at 36-37.) In his deposition, Wheatley reports that it was his impression that Cole was not a good candidate for employment because of disagreements Cole had with management, and an investigation of an earlier bus accident involving Cole. (*Id.* at Ex. 4, Wheatley Dep. at 93-95.)

According to Smith, substitute bus drivers are typically called by Smith when he needs them and, in the 2004-2005 school year, he did not call Cole to work for him. (*Id.* at Ex. 6, Smith Dep., at 42-43.) When Cole inquired why, Cole reports that Smith told her that he had his "hands tied." (*Id.* at Ex. 3, Cole Dep. at 78.) Smith admitted that he wanted to make Arundel High School happy because it was a big client that paid its bills on time, but was adamant that the decision to call or not call Cole was his alone. (*Id.* at Ex. 6, Smith Dep. at 42-43.) Cole followed up with Wheatley to find out why Smith was not calling her for work, and reports that Wheatley told Cole that she "basically wasn't the kind of driver that the County need[ed]." (*Id.* at Ex. 3, Cole Dep. at 80.) After this conversation with Cole, Wheatley sent an e-mail to McIntire and Richard Berzinski, Security Officer for the Arundel Board of Education, explaining that Smith had called him asking for a job referral for Cole, and reporting that he had told Smith that Cole could not service Arundel; Wheatley wrote that he "suspect[ed] that the decision [not to call Cole for substitute bus driving] had much to do with my referral." (*Id.* at Ex. 10, E-mail from Winship Wheatley to Bob Leib et al. (Aug. 31, 2004).) Berzinski wrote back stating that he backed Wheatley on his decision. (*Id.*) Wheatley wrote back to Berzinski telling him that "[s]omeone willing to hire [Cole] may do so, but we will let them know about issues," and thanking him for "watchin the back door on this [sic]." (*Id.*)

5

In response to the facts above, Cole filed suit against the County Board of Education, Sharon Stratton, Wanda McIntire, Winship Wheatley, Richard Berzinski, and Crofton Charters. Cole asserted Interference with Business Relations (Count One); deprivations of free expression, due process, and equal protection in violation of 42 U.S.C. § 1983 (Count Two); race-based discrimination in violation of 42 U.S.C. § 1981 (Count Three); Civil Conspiracy (Count Four); and Intentional Infliction of Emotional Distress (Count Five). Plaintiff did not distinguish between defendants and appears to assert all claims against all defendants. Crofton Charters successfully moved to sever itself from the other defendants, and its case has been moved to state court. The remaining defendants moved for summary judgment on all counts.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest

6

upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### I.     Interference with Business Relationships

Cole alleges that Stratton interfered with her business relationships by demanding that Cole be removed from her bus route servicing Arundel High School. Compl. at ¶ 20. Additionally, Cole alleges that Wheatley, McIntire, and Berzinski deliberately intervened to prevent Smith from hiring Cole. *Id.* at ¶ 21.

Maryland recognizes the tort of interference with business or contractual relationships. *See, e.g., Kaser v. Financial Protection Marketing, Inc.*, 376 Md. 621, 627-28 (2003); *Spengler v. Sears, Roebuck, & Co.*, 163 Md. App. 220, 242, 878 A.2d 628 (2005). The elements of the tort are well-established: 1) intentional and willful acts; 2) calculated to cause damage to the plaintiffs in their lawful business; 3) done with the unlawful purpose to cause such damage and loss without right or justifiable cause on the part of the defendants (constituting malice); and 4)

7

actual damage and loss resulting. *Kaser*, 376 Md. at 628-29 (*quoting Willner v. Silverman*, 109 Md. 341, 355 (1909)). Under Maryland law, "[t]ortious or deliberate intent to harm a plaintiff's business relationship is not alone sufficient to support an intentional interference claim. There must also be proof that the defendant's conduct in interfering with contract or business relations was accomplished through improper means." *Spengler*, 163 Md. App. at 242, 878 A.2d at 641-42 (*quoting Lyon v. Campbell*, 120 Md. App. 412, 431, 707 A.2d 850 (1998) (citations omitted)). Thus, to recover for tortious interference with business relationships, the plaintiff must prove that defendant's conduct was *independently* wrongful or unlawful. *Id.*

In *K&K Mgmt., Inc. v. Lee*, the Court of Appeals defined that independent "improper means," included "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *K&K Mgmt., Inc. v. Lee*, 316 Md. 137, 166, 557 A.2d 965 (1989); *See also Spengler*, 163 Md. App. at 243, 878 A.2d at 642; *Volcjak v. Washington County Hosp. Ass'n*, 124 Md. App. 481, 512-13, 733 A.2d 463 (1999); *Cf. Macklin v. Robert Logan Associates*, 334 Md. 287, 301, 639 A.2d 112 (1994) ("conduct that is quite subtle, nevertheless, can be improper or wrongful").

Cole has failed to prove that Stratton interfered with Cole's business relations through "improper means." In neither her complaint, nor her briefs does Cole allege any violence, intimidation, criminal fraud, violation of criminal law, institution or threat of groundless civil suit, or any similar conduct. While Cole alleges that Stratton ordered Crofton Charters to transfer her from Anne Arundel School, she does not allege that Stratton used any "improper means" in doing so. Cole does allege that an "Incident Report" that Stratton wrote regarding the

8

May 2004 encounter "contained inaccuracies that placed Cole in a false light," but does not claim that the Incident Report rises to the level of defamation. Pl.'s. Opp. Mem. at 14, n. 14 (*citing* Pl.'s Opp. Mem. at Ex. 4, Wheatley Dep. at 90-91.) At most, Cole alleges that Stratton expressed her dissatisfaction with Cole to Crofton Charters, an action that is not independently tortious and does not amount to improper means for purposes of interference with business relationships.

The allegations against Wheatley, the Supervisor of Transportation Services for the Arundel Board of Education, similarly fail because there is no proper allegation of wrongful conduct. While Wheatley told Smith that he could not hire Cole to drive for the Arundel Board, this conversation does not implicate any of the actions discussed in *Lee*, especially given that Smith did not interpret that conversation to mean that he could not hire Cole to serve other routes. (Def.'s Mem. at Ex. H, Smith Dep. at 32-33, 36-37; Def.'s Mem. at Ex. I, Wheatley Aff., at ¶ 2.) Furthermore, Smith has testified that even if Wheatley had told him that he could not hire Cole for other routes, he makes his own determinations about who to hire. (Def.'s Mem. at Ex. H, Smith Dep. at 73.) Smith stated that he did not employ Cole for substitute bus routes because he had planned to use her for the Arundel route, but that route was restricted. (*Id.* at 41-42, 71.) Cole has not presented enough evidence to show that Wheatley's actions were "improper means," which caused Cole actual damage. A rule to the contrary would mean that a former employer could not give an honest assessment about an employee's performance without incurring the risk that the employer is interfering with business relationships.

The claims against McIntire and Berzinski also have no basis. For Berzinski, Cole points only to an e-mail from Wheatley to Berzinski, after Wheatley spoke to Smith, in which Wheatley

states that "I advised that [Cole] could not service Arundel, and Arundel MS, as I now recall from a conversation with [Berzinski]." Berzinski responded by saying he agreed with Wheatley. This conversation is clearly not enough to prove that Berzinski engaged in a tortious act constituting improper means. As for McIntire, in her brief Cole does not even attempt to link McIntire to Smith's decision not to call Cole for substitute job routes. *(See* Pl.'s Opp. Mem. at 15-17.) These allegations are not sufficient to meet Cole's burden to "set forth specific facts showing that there is a genuine issue for trial" for any of the defendants. Fed.R.Civ.P. 56(e).

## II.     42 U.S.C. § 1983

Cole alleges that the defendants deprived her of her constitutional rights of free expression, due process, and equal protection in violation of 42 U.S.C. § 1983. Compl. at ¶ 23. In her complaint, Cole asserts only that "defendants, under color of law, subjected Cole to the deprivation of her constitutional rights of free expression and due process and equal protection in violation of 42 U.S.C. § 1983" without further explanation. *Id*. Each allegation will be discussed in turn.

### 1.     Free expression

Plaintiff appears to assert that she was retaliated against because she exercised her free speech rights in complaining about bus safety. The burden in a free speech/retaliation claim rests on the plaintiff to show that the speech involved a matter of "public concern," that the plaintiff was deprived of a valuable benefit, and that but for the protected speech, the government would not have taken the retaliatory action. *Goldsmith v. Mayor and City Council*

*of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993). "An employer's decision does not become a matter of public concern simply because an employee takes issue with it." *Robinson v. Balog*, 160 F.3d 183, 187 (4th Cir. 1998). The Supreme Court has held that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum" to review the employment decision. *Connick v. Myers*, 461 U.S. 138, 147 (1983). The Supreme Court also recently further restricted the scope of employees' First Amendment protection, holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1960 (2006).

To determine whether employee speech addresses a matter of public concern, the court must examine "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. Whether an employee's speech touches on a matter of public concern is typically a question of law, not fact. *Connick*, at 461 U.S. at 148, n.7.

Assuming *arguendo* that Cole is a governmental employee and that the defendants were acting under the color of state law, Cole's claim fails because she was not speaking as a citizen upon a matter of public concern. Plaintiff met with Stratton after complaining that the school district did not adequately follow up after Cole's complaints about one student not sitting in his assigned seat. It is undisputed that writing behavior referrals is part of a bus drivers' official duties. While Cole concedes submitting behavior referrals is an official duty, she claims that "follow-up of the referrals was not a job requirement, and attendance at the meeting with Mrs. Stratton was not a requirement in the ordinary course of business." (Pl.'s Mem. Opp., at 22.)

11

Whether or not following up on referrals is technically one of Cole's job duties, it is clear that the meeting (and the speech) arose out the original submission of the behavior referrals. In *Garcetti*, the Court contrasted the protected speech in *Pickering v. Board of Education*, where a teacher's letters to the editor about school budget issues had no official significance and were similar to letters submitted by numerous citizens every day, with the facts in *Garcetti* where the plaintiff's speech was made "as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case" and was hence not protected. *Garcetti*, 126 S. Ct. at 1960; *Pickering v. Board of Ed. of Township High School Dist. 205, Will County*, 391 U.S. 563, 572-73 (1968). Here it is clear that Cole was not following up on her disciplinary referral as a citizen, but went into the meeting with defendants as part of her official duties. Unlike in *Pickering*, Cole's speech had official significance (Cole was following up on her official, written behavior referrals), and could not have been made by public citizens. Indeed, the facts here are similar to the facts in *Garcetti*, where the prosecutor's private memorandum to his supervisor about a case he was working on was not protected, because that speech was "part of what he ... was employed to do." *Garcetti*, 126 S. Ct. at 1960.

The statements also do not touch on a matter of public concern. Several types of statements have been held to generally touch on matters of public concern, including statements relating to racial discrimination, *Connick*, 461 U.S. at 148, n. 8; wrongdoing or breach of the public trust, *Balog*, 160 F.3d at 187-89; and mismanagement of a school budget, *Stroman v. Colleton County School Dist.*, 981 F.2d 152, 157-58 (4th Cir. 1992). In contrast, matters that concern individual employees more specifically typically do not touch on a public concern. *See, e.g, Boring v. Buncombe County Bd. of Educ.*, 136 F.3d 364, 368-69 (4th Cir. 1998) (high school

12

teacher's dispute with principal over editing of school play is not a matter of public concern); *Finch v. Fort Bend Ind. School Dist.*, 333 F.3d 555, 563-64 (5th Cir. 2003) (plaintiff's statements addressing internal administrative approaches to running a school were not a matter of public concern). In *Connick*, the Court held that speech concerning intraoffice transfer policies (including plaintiff's own transfer), office morale, and grievance procedures were not matters of public concern. 461 U.S. at 148.

Cole claims that "[c]learly, the community should be concerned whether bus drivers have control of the students within their care." (Pl.'s Opp. Mem. at 21.) Here, although the speech concerned a school, it is not of the type in which the public would be particularly interested, because the conversation at issue involved the disciplinary process of one student and one bus driver. While school bus safety is, of course, not a trivial matter, if a dispute concerning one student's discipline were a matter of public concern, virtually any teacher-administrator dispute on any issue would be a matter of public concern. Furthermore, while not dispositive, the statement at issue was made not in an attempt to inform the public or to further public discourse, but rather in the context of a private complaint to the school administration. Accordingly, summary judgment will be granted on this claim.

### 2. Due Process

Due process guarantees attach only to government employees, and defendants dispute that plaintiff is a government employee.[1] Again, assuming *arguendo* that Cole is a state employee, government employees are entitled to procedural due process only when they have

---

[1] Cole appears to have been an at-will employee of a private company.

been deprived of a constitutionally protected property or liberty interest. *Garraghty v. Jordan*, 830 F.2d 1295, 1299 (4th Cir. 1987); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). A public employee who has a property interest in his employment is entitled to a hearing prior to the imposition of the discipline. *See Goldberg v. Kelly*, 397 U.S. 254 (1970). To determine whether an employee is afforded due process, a court must first determine whether the employer adversely affected a property right, and then consider the effect of the action on the employee.

      Here, Cole's claim fails because her transfer to another bus route is not a "property interest" for due process purposes. Transfers and reassignments that do not constitute firings or suspensions typically have not been held to implicate a property interest. *See, e.g., Leonard v. Suthard*, 927 F.2d 168, 170 (4th Cir. 1991) (applying Virginia law, the court held that "although Leonard may have a property interest in continued employment which is protected by the fourteenth amendment, that property interest does not extend to the right to perform particular duties in a particular location"); *Maples v. Martin*, 858 F.2d 1546, 1550 (11th Cir. 1988) (professor's reassignment to another department did not require due process, and noting that "[t]ransfers and reassignments have generally not been held to implicate a property interest.") Indeed, Cole cited no cases with similar facts demonstrating that a transfer is protected by due process requirements. Here, Cole's transfer to another bus route, even if not the route most preferable to her, does not implicate due process, especially because Cole's pay rate did not change and she provided no evidence that her job responsibilities or chances of promotion were

diminished.[2]  Accordingly, summary judgment will be granted for the defendants.

### 3. Equal Protection

Plaintiff's complaint makes no explanation of her Equal Protection Claim, but it appears that she is alleging intentional racial discrimination based on the same incidents and accusations she raises in her § 1981 claims.  As addressed more thoroughly in the following section evaluating her § 1981 claims, Cole cannot establish the elements necessary to make out a case of intentional racial discrimination, meaning her equal protection claims must fail as well.  *See Whiting v. Jackson State University*, 616 F.2d 116, 121-22 (5th Cir. 1980) ("In order to establish a violation of the equal protection clause, the plaintiff must prove a racially discriminatory purpose or motive" and "insofar as it used as a parallel remedy under § 1981 ..., the elements of the causes of action do not differ.")

### III. 42 U.S.C. § 1981

Section 1981 (and Title VII) claims are analyzed under the well known burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.

---

[2] Plaintiff argues that the transfer of her route caused her a loss in pay.  The facts do not support this.  When Cole was transferred, she was not demoted or given a reduced pay rate.  To the extent that she would have lost pay, it would have been because her hours were to be somewhat reduced.  In his affidavit, however, Robert Dick affirmed that Cole quit before he could retrain her on additional routes; indeed, Cole quit after just two days. (Def.'s Mem. at Ex. G, Dick Aff., at ¶ 11.)  Further, Dick explained it was his intention that plaintiff's transfer, done with only three to four weeks left in the school year, was to be temporary "until [Dick] had time to straighten out the problem." *Id.* at ¶ 10.  The defendants testified that they did not consider the transfer to be a demotion, nor did they consider decreasing plaintiff's pay rate.

*See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). If the *prima facie* case is established, the burden then shifts to the employer to produce evidence that the employment decision was made for legitimate nondiscriminatory reasons. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision, the plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *See St. Mary's Honor Center*, 509 U.S. at 507-08. The *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated, although it will not *always* be adequate to sustain a jury's finding of liability. *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 148 (2000) ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.").

The Section 1981 claims appear to be based on Cole's transfer, which she considers a demotion. (Pl.'s Opp. Mem. at 22-23.) To establish a *prima facie* case of discriminatorily motivated demotion Cole must prove: 1) that she is a member of a protected class, 2) that she was demoted, 3) that at the time of the demotion she was performing her job at a level that met her employer's legitimate expectations, and 4) "ordinarily," that she was replaced by someone of comparable qualifications who was not a member of the protected class. *Miles v. Dell*, 429 F.3d 480, 486 (4th Cir. 2005); *Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998).

Cole's claim fails on this count for several reasons. First, her transfer to another bus

16

route is not a demotion for purposes of employment discrimination claims. An action is typically found to be a "demotion" when an employee has his job title changed, or his responsibilities or pay diminished. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004) (*quoting Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999) ("absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action")); *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (a tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing a significant change in benefits") (emphasis added). As detailed above, Cole saw no change in wage rate, job title, level of responsibility, or opportunity for promotion; the only tangible detriment of the new position was a decrease in the number of hours she was initially set to work a week. But that initial decrease in the hours worked was intended to be temporary, and Cole quit before she could be trained on other routes. Given that Cole's transfer may not have ultimately resulted in more than a de minimis loss in pay, Cole has not been able to prove that her transfer adversely affected her. *See e.g., Boone*, 178 F.3d at 255-56 (transfer of employee where employee suffered more stress, but no change in pay or benefits, loss of job title, or supervisory responsibility, was not an adverse employment action); *Qualls v. Giant Food, Inc.*, 187 F. Supp. 2d 530, 534 (D. Md. 2002) (where employee was placed on light duty in a department but suffered no alteration of terms, conditions, or benefits, plaintiff did not suffer an adverse employment action).

   Cole's claim is also weakened because her position ultimately was filled by a person of

the same protected class. While a plaintiff in the Fourth Circuit need not always show that she was replaced by a person outside the same protected class, it is also true that being replaced by someone in the same protected class "ordinarily gives rise to an inference that the defendant did not fire the plaintiff because of her protected status." *Miles*, 429 F.3d at 488. While Cole's position initially was filled by a Caucasian woman, this appointment was only a temporary fill for the month-long duration of the school year. At the beginning of the new school year in September, the position was filled on a non-temporary basis by an African-American woman. Cole has provided no information that would overcome the inference that defendants' hiring of an African-American replacement showed a lack of discriminatory intent. *See Miles*, 429 F.3d at 488-89 (describing instances where inference of non-discrimination could be overcome).

Lastly, assuming that Cole was able to prove a prima facie case of discrimination, her claim would still fail because she has provided no evidence that the defendants' reasons for Cole's termination were pretextual. According to the defendants, the reason Cole was reassigned was a dispute over the proper handling of disciplinary referrals. (Def.'s Mem. at Ex. B, Stratton Dep. at 77-78.) Cole's only grounds for believing that Stratton discriminated against her were Stratton's tone, body language and the way Cole "felt." (Pl.'s Opp. Mem. at Ex. 3, Cole Dep. at 95-96.) Cole pointed to nothing specific that established defendants' proffered reasons were pretextual. It is well established in this Circuit that a plaintiff's unsubstantiated beliefs that defendant treated her unfairly and that race and national origin formed the basis of her termination are not sufficient to rebut the defendant's proof of a nondiscriminatory reason. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir. 2000) (noting that "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence

of legitimate nondiscriminatory reasons for an adverse employment action") (internal citations omitted). Even drawing every inference in favor of Cole, there is simply not sufficient indication that the defendants' asserted reasons were pretextual for her to survive summary judgment. Absent any showing of pretext, Cole's claim fails.[3]

### IV.     Civil Conspiracy

Under Maryland law, a conspiracy is defined as "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Superior Bank, F.S.B., v. Tandem National Mortgage, Inc.*, 197 F. Supp. 2d 298, 319 (D. Md. 2000) (*quoting Green v. Washington Suburban Sanitary Comm'n.*, 259 Md. 206, 221, 269 A.2d 815 (1970)). Civil conspiracy is not a separate and free standing tort for which damages may be awarded in the absence of other tortious injury. *Superior Bank, F.S.B.*, 197 F. Supp. 2d at 319. Here, because Cole's interference with business relationships, 42 U.S.C. § 1981, and 42 U.S.C. § 1983 claims were all found to be without merit, the civil conspiracy claim must be dismissed as well.

### IV.     Intentional Infliction of Emotional Distress

Cole's intentional infliction of emotional distress claim is also without merit. In Maryland, to state a claim for intentional infliction of emotional distress, a plaintiff must

---

[3] In neither her complaint, nor her briefs, did Cole specify any § 1983 claims based on Smith's failure to give her substitute bus routes, and so the § 1983 claim seems to be directed only toward Stratton.

establish: 1) defendants' conduct was intentional or reckless, 2) the conduct was extreme and outrageous, 3) the conduct caused emotional distress, and 4) the emotional distress was severe. *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977). For conduct to be "extreme and outrageous", it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 567 (quoting Restatement (Second) of Torts § 46, comment (d) (1965)). The reassignment of Cole's bus route does not rise to the level of being extreme or outrageous, and Cole cited no cases to support her IIED claim.

Cole's claim of intentional infliction of emotional distress also fails because she has not demonstrated that she suffered sufficient harm. Under Maryland law, a plaintiff must show the "truly devastating effect of the conduct they were subjected to by proving an emotional response so acute that no reasonable person could be expected to endure it." *Rich v. United States*, 158 F. Supp. 2d 619, 630 (D. Md. 2001) (internal citation omitted). Here, Cole has not proffered such evidence, and accordingly the defendants are entitled to summary judgment.

A separate order follows.

   November 30, 2006                                      /s/
Date                                                  Catherine C. Blake
                                                       United States District Judge